GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy (#134180)
Kevin F. Ruf (#136901)
Marc L. Godino (#182689)
Danielle L. Manning (#313272)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SCOTT, individually and on behalf of all others, <br><br> Plaintiff, <br><br> v. <br><br> EQUIFAX INC., <br><br> Defendant. | Case No.: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) Negligence (28 U.S.C. § 1332);** <br><br> **(2) Violations of Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.); and** <br><br> **(3) Declaratory Judgment** <br><br> **JURY TRIAL DEMANDED** |

373722.4 EQUIFAX

Anthony Scott ("Plaintiff"), individually and on behalf of all others similarly situated, files this Consolidated Class Action Complaint against Equifax, Inc. ("Equifax" or "the Company") and alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## INTRODUCTION

1. Plaintiff, and the other Class Members are current and former customers of Defendant whom entrusted their personally identifiable information ("PII"), including Social Security numbers, birth dates, driver's license numbers, credit card numbers, and other information, to Equifax. Equifax betrayed Plaintiff's trust by failing to properly safeguard and protect his PII and by exposing his PII to cybercriminals.

2. Defendant, Equifax Inc. is one of the three major credit reporting companies in the United States and is regularly entrusted with the storage, and security of its customers PII.

3. On or about July 29, 2017, Equifax discovered that cybercriminals had exploited a "website application vulnerability" ("the Vulnerability") in its system and stolen the PII information of over 143 million individuals (the "Data Breach").

4. In the period between the discovery of the Data Breach, on July 29, 2017, and the public disclosure of the breach, Equifax managers sold shares worth almost $1.8 million.

5. After over a month had passed, Equifax publicly announced the Data Breach on September 7, 2017, upon this news the Company's stock plummeted over 6 percent.

6. As a result of the Data Breach, Plaintiff and other Class Members will bear an immediate and heightened risk of all manners of identity theft.

7. Equifax was negligent in taking the necessary precautions required to safeguard and protect Plaintiff's and Class Members' PII from cybercriminals, and also breached its duty to timely and adequately disclose the Data Breach.

8. Furthermore, Equifax is in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL") for failing to take reasonable measures in protecting Plaintiff's and the Class Members' PII.

9. Plaintiff on behalf of himself and the other Class Members, seeks actual damages, economic damages, injunctive relief, and attorneys' fees, litigation expenses, and costs.

## THE PARTIES

### Defendant

10. Equifax Inc. is a multi-billion dollar corporation, incorporated in Georgia, and headquartered in Atlanta, Georgia.

11. Equifax provides credit information services to millions of businesses, governmental units, and consumers across the globe.

12. Equifax operates through various subsidiaries including Equifax Information Services, LLC, and Equifax Consumer Services, LLC aka Equifax Personal Solutions aka PSOL. Each of these entities acted as agents of Equifax or in the alternative, acted in concert with Equifax as alleged in this complaint.

### Plaintiff

13. Anthony Scott is an individual consumer residing in Burbank, California.

14. On or about September 6, 2017, Plaintiff entered his information on equifaxsecurity2017.com and subsequently received a message from Equifax informing him that his PII had been stolen by cybercriminals in the Data Breach.

15. As a result of the Data Breach Plaintiff has suffered a loss of privacy, is at a continuous high risk of identity theft or other types of financial fraud, and

will continue to suffer from the increased financial and mental costs necessary to consistently monitor and guard against the aforementioned risks.

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, at least one Class Member is a citizen of a state that is diverse from Equifax Inc., and the amount in controversy exceeds $5 million, exclusive of interest and costs.

17. This Court has personal jurisdiction over Equifax because Equifax maintains offices in California, conducts business in California, and has sufficient minimum contacts with California to satisfy Due Process standards.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL ALLEGATIONS

19. Equifax is one of the three main credit reporting companies in the United States. The Company's business revolves around being a secure storehouse for PII, including financial information, and providing a clear financial profile of consumers that lenders and other businesses can rely on.

20. Throughout the past year, Equifax collected and stored PII from Anthony Scott, including his Social Security number, birth date, home driver's license information, and credit card numbers.

21. From about May 2017 through July 2017, Equifax suffered from a self-described "website application vulnerability" which left consumers' PII vulnerable to cybercriminals.

22. On or about July 29, 2017, Equifax discovered that cybercriminals had exploited the Vulnerability in its system and stolen the PII information of over 143 million individuals.

23. Presumably realizing the effect of this news would have on Equifax's stock price, on Monday, August 1, 2017, Chief Financial Officer John Gamble sold Equifax shares worth $946,374, about 13 percent of his holdings, and Joseph Loughran, President of U.S. Information Solutions exercised options to dispose of Equifax stock worth $584,099, amounting to about 9 percent of his holdings.

24. On August 2, 2017, Rodolfo Ploder, President of Workforce Solutions, sold $250,458 of Equifax stock, almost 4 percent of his holdings.

25. Together, these three Equifax senior executives sold Equifax shares worth almost $1.8 million in the period between the discovery of the data breach on July 29, 2017, and disclosure of the Data Breach to the public in September 2017.

26. Notwithstanding the suspicious timing of these stock sales, it is appalling that Equifax executives would choose to engage in such insider trading rather than notify the millions of innocent victims that their personal information had been compromised due to Equifax's negligence.

27. On September 7, 2017, over a month after Equifax discovered the Data Breach and the insider trading was executed, Equifax finally publicly announced the breach. Upon this disclosure Equifax shares tumbled over 6 percent from around $142 to around $125 in after-hours trading.

28. After Equifax's disclosure of the Data Breach, the Company set up a website, equifaxsecurity2017.com, where consumers could enter in personal information to determine whether their data may have been compromised.

29. Equifax has also subsequently offered those impacted by the Data Breach one year of "complimentary" credit monitoring and identity theft protection, but this is a poor remedy that could result in further injury from the Data Breach to consumers, since it automatically renews and charges consumers who do not proactively cancel the subscription before the year is up.

30. Thus, rather than an altruistic gesture, Equifax has turned its data breach into a massive marketing opportunity potentially generating millions of dollars in profits for itself.

31. On or about September 6, 2017, Plaintiff Anthony Scott visited the equifaxsecurity2017.com, entered some personal information, and was informed that his PII had been stolen and compromised by cybercriminals.

32. As a result of the Data Breach, and for the rest of Mr. Scott's and other Class Members life, they will bear an immediate and heightened risk of all manners of identity theft.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings these claims pursuant to Federal Rule of Civil Procedure 23 on behalf of a class of similarly situated persons, which he proposes to be defined as follows:

 a. **Nationwide Class:** All current consumers whose PII was compromised as a result of Equifax Inc.'s negligence and the subsequent hacking of Equifax's online database by cybercriminals that occurred between May 2017 and July 2017, and was discovered by Equifax on July 29, 2017.

34. Excluded from the class are all attorneys for the class, officers and members of Equifax, including officers and members of any entity with an ownership interest in Equifax, any judge who sits on the case, and all jurors and alternate jurors who sit on the case.

35. **Numerosity:** The proposed class contains thousands of individuals dispersed throughout the United States. Joinder of all members is impracticable. Class Members can be identified through Equifax's records.

36. **Commonality:** Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class

Members.  Common questions include:

  a. Whether and to what extent Equifax had a duty to protect the class members' PII;

  b. Whether Equifax breached its duty to protect the Class Members' PII;

  c. Whether Equifax disclosed Class Members' PII.

  d. Whether Equifax timely, accurately, and adequately informed class members that their PII had been compromised;

  e. Whether Class Members are entitled to damages; and

  f. Whether Class Members are entitled to injunctive relief.

37. **Typicality:**.  Plaintiff's claims are typical of the claims of members of the proposed class because, among other things, Plaintiff and Class Members sustained similar injuries as a result of Equifax's uniform wrongful conduct; Equifax owed the same duty to each Class Member; and their legal claims arise from the same conduct by Equifax.

38. **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the proposed class.  His interests do not conflict with the Class Members' interests. Plaintiff has retained class counsel experienced in class action litigation to prosecute this case on behalf of the class.

39. **Rule 23(b)(3)**.  In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual Class Members and a class action is superior to individual litigation. The amount of damages available to individual Class Members is insufficient to make litigation addressing Equifax's conduct economically feasible in the absence of the class action procedure. Individualized litigation also presents a potential for inconsistent or contradictory judgments, and increases the delay and

expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

40. **Rule 23(b)(2)**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(b)(2). Equifax has acted or refused to act on grounds that apply generally to the proposed classes, making final declaratory or injunctive relief appropriate with respect to the proposed classes as a whole.

41. **Rule 23 (c)(4)**. Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). The claims of Class Members are composed of particular issues that are common to all Class Members and capable of class wide resolution that will significantly advance the litigation.

## CAUSES OF ACTION

### First Cause of Action
(Negligence)

42. Plaintiff re-alleges and incorporates by reference all prior allegations as if fully set forth herein.

43. This cause of action is brought on behalf of the nationwide class.

44. Equifax Inc. is one of the three major credit reporting companies in the United States and regularly engages with and stores PII of its customers. As such, Equifax had full knowledge of the sensitivity of the PII and the types of harm that Plaintiff and Class Members could and would suffer if the PII were wrongfully disclosed. Additionally, as an entity engaged in the business of storing and reporting PII, it had a duty to Plaintiff and each Class Member to exercise reasonable care in holding, safeguarding and protecting that information. Plaintiff and the Class Members were the foreseeable victims of any inadequate safety and

security practices. Plaintiff and the other Class Members had no ability to protect the data that was in Equifax's possession.

45. Equifax's duty to the Plaintiff and other Class Members included, *inter alia*, establishing processes and procedures to protect the PII from wrongful disclosure and ensuring that its internet security measures were up to date and regularly tested.

46. In addition, Equifax had a duty to timely and adequately disclose to Plaintiff and the other Class Members that their PII had been compromised. Such timely disclosure was necessary to allow Plaintiff and the other Class Members to (i) purchase identity protection services; (ii) monitor their bank accounts, credit cards and other financial accounts; and (iii) take other steps to protect against identity theft and the fraudulent use of their PII by third parties.

47. Equifax admitted that Plaintiff's and the other Class Members' PII was wrongfully disclosed as a result of the Data Breach. Equifax has further admitted that the Data Breach was the result of a "website application vulnerability." This vulnerability could very likely have been prevented if Equifax had been diligent in protecting consumers PII.

48. Equifax breached its duty to Plaintiff and the Class Members by failing to maintain proper security measures, policies and procedures, and training. Equifax failed to timely notify Plaintiff and the Class Members of the Data Breach, waiting over a month from discovery of the hack to publicly announcing the breach. Plaintiff and the Class Members have been harmed as a direct and proximate result of Equifax's negligence. Plaintiff and the Class Members will continue to be harmed as a direct and proximate result of Equifax's negligence.

49. As a result of Equifax's negligence, Plaintiff and the Class Members have suffered and will continue to suffer damages and injury including, but not necessarily limited to: a) out-of-pocket costs associated with addressing false tax

returns filed with the IRS and state tax agencies; b) increased future out of pocket costs in connection with preparing and filing tax returns; c) out-of-pocket costs associated with procuring identity protection and restoration services; d) in the event of future identity theft, out-of-pocket costs associated with repairing credit, reversing fraudulent charges, and other harms; and e) lost productivity and enjoyment as a result of time spent monitoring, addressing and correcting future consequences of the Data Breach.

50. Plaintiff and the Class Members are entitled to money damages for all out-of-pocket costs caused by Equifax's negligence. Plaintiff also seeks reasonable attorneys' fees and costs under the applicable law, including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

### Second Cause of Action
**(Violation of Unfair Competition Law California Business and Professional Code Section 17200, *et seq*. – On Behalf of All Classes)**

51. Plaintiff re-alleges and incorporates by reference all prior allegations as if fully set forth herein.

52. This cause of action is brought on behalf of the nationwide class.

53. Equifax engaged in unfair and unlawful business practices in violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL"). Equifax's acts, omissions, and conduct constitute unfair and unlawful business practices under the UCL.

54. Equifax's practices were unlawful and in violation of Civil Code section 1798.81.5 of the Customer Records Act ("CRA") because Equifax failed to take reasonable measures in protecting Plaintiff's and the Class Members' PII.

55. Equifax's practices were unlawful and in violation of Civil Code section 1798.82 of the CRA because Equifax failed to timely disclose that Plaintiff's and the Class Members' PII had been breached by hackers.

56. Equifax's acts, omissions, and conduct also constitute "unfair"

business acts or practices because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, to Plaintiff, Class Members, and others. The gravity of harm resulting from Equifax's conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Equifax's legitimate business interests.

57. Equifax has exclusive knowledge about the extent of the Data Breach, including during the days and weeks following the Data Breach.

58. As a direct and proximate result of Equifax's unlawful and unfair business practices as alleged herein, Plaintiff and the Class Members have suffered injury in fact. Plaintiff and the class have been injured in that their personal and financial PII has been compromised, subject to identity theft, identity fraud, and/or is at risk for future identity theft and fraudulent activity on their financial accounts.

59. As a direct and proximate result of Equifax's unlawful and unfair business practices as alleged herein, Plaintiff and Class Members already suffer from identity theft, identity and financial fraud, and/or a continuing increased risk of identity theft and financial fraud due to the compromise, publication, and/or unauthorized use of their financial PII. Plaintiff and the Class Members have also been injured by, among other things: (1) the loss of the opportunity to control how their PII is used; (2) the compromise, publication, and/or theft of their PII; (3) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of financial accounts; (4) lost opportunity costs associated with effort expended and the loss of productivity from addressing and attempting to mitigate the actual and future consequences of the breach, including but not limited to efforts spent researching how to prevent, detect, contest and recover from identity fraud; (5) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including complete credit

denial and/or increased costs to use credit, credit scores, credit reports and assets; (6) unauthorized use of compromised PII to open new financial accounts; (7) tax fraud and/or other unauthorized charges to financial accounts and associated lack of access to funds while proper information is confirmed and corrected; (8) the continued risk to their PII and the PII of their family members which remain in Equifax's possession and are subject to further breaches so long as Equifax fails to undertake appropriate and adequate measures to protect the PII in its possession; and (9) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the Plaintiff's and the Class Members' lives.

60. As a result of Equifax's violations of the UCL, Plaintiff and the Class Members are entitled to injunctive relief, including, but not limited to an order that Equifax: (1) engage third party security internet security testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Equifax's internet security measures on a periodic basis; (2) engage third party internet security testers and internal personnel to run automated security monitoring of Equifax's websites and databases consistent with prudent industry practices; (3) audit, test, and train its internal internet security personnel regarding any new or modified procedures; (4) conduct regular website, internet, and online database scanning and security checks consistent with prudent industry practices; (6) periodically conduct internal training and education to inform internal personnel how to identify and contain a data breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receive periodic compliance audits by a third party regarding the security of the Equifax's online websites and databases it uses to store the PII of its customers; (8) provide ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

Because of Equifax's unlawful and unfair business practices, Plaintiff and the Class Members are entitled to relief, including attorneys' fees and costs, restitution, declaratory and injunctive relief. Plaintiff also seeks reasonable attorneys' fees and costs under applicable law including Federal Rule of Civil Procedure 23 and California Code of Civil Procedure § 1021.5.

### Third Cause of Action
### (Declaratory Judgment – On Behalf of All Classes)

61. Plaintiff re-alleges and incorporates by reference all prior allegations as if fully set forth herein.

62. This cause of action is brought on behalf of all the nationwide class.

63. As set forth above, Plaintiff and the Class Members have valid claims against Equifax for negligence and violations of the UCL. An actual controversy has arisen in the wake of Equifax's Data Breach regarding Equifax's current obligations to provide reasonable internet security measures to protect the PII of Plaintiff and the Class Members.

64. Plaintiff thus seeks a declaration that to comply with its existing obligations, Equifax must implement specific additional, prudent industry security practices, as outlined below, to provide reasonable protection and security to the PII of Plaintiff and the Class Members. Specifically, Plaintiff and the Class Members seek a declaration that (a) Equifax's existing internet security measures do not comply with its obligations, and (b) that to comply with its obligations, Equifax must implement and maintain reasonable internet security measures on behalf of Plaintiff and the Nationwide Class, including, but not limited to: (1) engaging third party security internet security testers as well as internal security personnel to conduct testing consistent with prudent industry practices, including simulated attacks, penetration tests, and audits on Equifax's internet security measures on a periodic basis; (2) engaging third party internet security testers and

internal personnel to run automated security monitoring of Equifax's websites and databases consistent with prudent industry practices; (3) audit, test, and train its internal internet security personnel regarding any new or modified procedures; (4) conducting regular website, internet, and online database scanning and security checks consistent with prudent industry practices; (6) periodically conducting internal training and education to inform internal personnel how to identify and contain a data breach when it occurs and what to do in response to a breach consistent with prudent industry practices; (7) receiving periodic compliance audits by a third party regarding the security of the Equifax's online websites and databases it uses to store the PII of its customers; (8) providing ongoing identity theft protection, monitoring, and recovery services to Plaintiff and Class Members.

65. The Plaintiff and each Class Member is entitled to a declaration of rights providing that Equifax is obligated, pursuant to terms established by the Court, to reimburse said individuals for any and all future harm caused by the Data Breach.

## **PRAYER FOR RELIEF**

Plaintiff seeks relief for himself and the proposed nationwide class as follows:

a. Certify this case as a class action, appoint Plaintiff as a class representative and appoint Plaintiff's counsel to represent the classes;

b. Find that Equifax breached its duty to safeguard and protect Plaintiff and the Class Members' PII which was compromised in the Data Breach;

c. Award Plaintiff and Class Members appropriate relief, including actual damages, punitive damages, and statutory damages;

d. Award equitable, injunctive, declaratory relief as appropriate;

e. Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

    f.    Award pre-judgment and post-judgment interest as prescribed by law; and

    g.    Grant additional legal or equitable relief as the Court may find just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: September 12, 2017    **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Marc L. Godino*
Lionel Z. Glancy
Kevin F. Ruf
Marc L. Godino
Danielle L. Manning
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Attorneys for Plaintiff*